IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANGELA BOWEN-HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05CV00379 |
| | ) | |
| TROXLER ELECTRONIC | ) | |
| LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

BEATY, Chief Judge.

I.  INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment [Document #11] by Defendant Troxler Electronic Laboratories, Inc. ("Defendant"), as well as a Motion [Document #13] by Plaintiff Angela Bowen-Hayes ("Plaintiff") to Strike the Affidavit of James H. Boylan, Jr.  In this case, Plaintiff brings claims alleging that Defendant terminated her employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (2007), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (2007).  For the reasons discussed below, Plaintiff's Motion to Strike will be DENIED and Defendant's Motion for Summary Judgment will be GRANTED.  Accordingly, this case will be DISMISSED with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a company that manufactures nuclear gauges for testing water density in soil and asphalt, and it sells those gauges primarily to highway construction and agricultural firms. Defendant hired Plaintiff in 1983 to work with the AS-400 computer system within Defendant's Management Information Systems ("MIS") Department. Under the AS-400 system, Defendant's employees relied upon Plaintiff as the computer operator to retrieve any information from the system which they might need. Plaintiff's primary tasks with respect to the AS-400 were to prepare reports, monitor the system for security purposes, and perform data entry. During this time, Plaintiff was not responsible for programming the AS-400, and Plaintiff admits that she did not know how to write a computer program. (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1A, p. 51.) In addition to these computer-related responsibilities, a significant portion of Plaintiff's job throughout her tenure with Defendant also involved the performance of administrative and accounting tasks as needed. During the twenty-year period that Plaintiff was employed by Defendant, Defendant's formal evaluations of Plaintiff contained no significant negative comments and generally reflected that Plaintiff was an asset to Defendant's business.

After the events of September 11, 2001, Defendant's sales declined and it began to struggle financially. Plaintiff does not contest Defendant's evidence showing that, as a result of Defendant's declining sales, Joe Mentz ("Mentz"), Defendant's Vice President of Operations, began to streamline Defendant's business. As a part of this streamlining, Mentz asked the company managers to determine whether any positions within their departments could be

eliminated or combined. Defendant's work force subsequently dropped from about 150 employees to approximately 70 or 80 employees. Plaintiff also does not contest Defendant's evidence that shortly thereafter in 2002, Defendant also decided to improve its efficiency by upgrading its AS-400 computer system to a personal computer system. Under the newer personal computer system that Defendant planned to implement, individual employees would now be able to access information directly from their own computers instead of relying on Plaintiff to retrieve it from the AS-400.

In the fall of 2003, in order to facilitate the process of upgrading its computer system, Defendant hired Ken Francesconi ("Francesconi") on a part-time, contractual basis. Francesconi was about 30 years old at the time he was hired by Defendant. Defendant contends that in addition to possessing knowledge of personal computers that allowed him to assist in setting up Defendant's new system, Francesconi also knew how to troubleshoot the computer hardware and software that Defendant would now be using in lieu of the AS-400. Plaintiff concedes, however, that she only had very limited knowledge of the personal computer system in comparison to Francesconi's expertise in that area. (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1A, p. 53.) Beginning in 1995, Plaintiff began reviewing books on computer programming. She also took one class on personal computer software and another on Ethernet connectivity. In addition, Plaintiff learned what she could about programming skills from her fellow employees. However, Plaintiff admits that, despite these efforts, her skills were limited when it came to troubleshooting software on the personal computers, and she accepts the fact

3

that Francesconi's training in this area was more sophisticated. (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1A, p. 54.)

In January 2004, after Francesconi had worked for Defendant on a part-time basis for about one year, Defendant's Human Resources Department posted a job opening for a permanent personal computer technician. Plaintiff was aware of this job opening but chose not to apply for the position. In fact, Plaintiff concedes that she expressly advised Annalee Richardson, Defendant's Human Resources Director, that she did not want to do personal computer work. (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1B, p. 81.) Francesconi applied for the position and was hired as a permanent employee in Defendant's MIS Department in January 2004. After Francesconi was hired, the MIS Department consisted of three employees, which included Plaintiff, the MIS Department's manager, Bill Twomey ("Twomey"), and Francesconi.

Defendant contends that as part of its continuing efforts to reduce costs, James H. Boylan, Jr. ("Boylan"), Defendant's Controller, decided that the MIS Department could be run more efficiently with only two employees. According to Defendant, Boylan also concluded that Francesconi had the skills and experience needed to manage Defendant's new personal computer system alone and that Francesconi could easily learn how to address any residual issues relating to the AS-400. Boylan expected that any work associated with the AS-400 would decrease as Defendant's technology continued to improve in the transition to the new personal computer system. Therefore, in June 2004, Boylan decided to eliminate Plaintiff's position and assign her

4

remaining computer-related duties to Francesconi. Defendant argues that it made this decision as a result of Francesconi's superior personal computer expertise and Defendant's decreasing need for Plaintiff's AS-400 skills. Plaintiff was 54 years of age when Defendant terminated her employment. In response to being terminated, on November 16, 2004, Plaintiff filed a complaint with the United States Equal Opportunity Employment Commission ("EEOC") asserting that Defendant terminated her employment because of her age. Plaintiff subsequently received a "Right to Sue" letter from the EEOC. Plaintiff thereafter filed the instant lawsuit with this Court in which she alleged that Defendant's decision to terminate her employment was motivated by age discrimination in violation of the ADEA.[1] However, although Plaintiff contends that the decision to terminate her was motivated by age discrimination, Plaintiff in her deposition indicated that: "I don't think [the reason I was discharged] was as much age

---

[1] Plaintiff's Complaint asserts generally that it is brought pursuant to both the ADEA and Title VII, 42 U.S.C. § 2000e, *et seq*. However, Plaintiff in her Complaint alleges discrimination only on the basis of age, and not on the basis of any protected characteristic under Title VII. In addition, Plaintiff's EEOC charge similarly alleged discrimination only on the basis of age. Moreover, Plaintiff in her deposition made clear that she alleges only age discrimination. (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1C, p. 113.) Therefore, the Court finds that although Plaintiff's Complaint makes reference to Title VII, Plaintiff in this case has asserted only a claim for age discrimination in violation of the ADEA. To the extent that Plaintiff's Complaint could be viewed as asserting a Title VII claim, that claim will be dismissed for failure to allege any basis therefore, as well as for failing to exhaust her administrative remedies since no Title VII claim was included in her EEOC charge. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (noting that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit").

5

discrimination as it was that I had been there for over 20 years . . . and they could hire somebody else who only got two weeks of vacations versus my five weeks, probably making the same amount of money." (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1C, p. 130.)

Defendant has filed the present Motion for Summary Judgment contending that Plaintiff has failed to present sufficient evidence to support a claim of age discrimination and that this case should therefore be dismissed. In response, Plaintiff has filed a Motion to Strike, seeking to strike one of the affidavits submitted by Defendant in support of its Motion for Summary Judgment. The Court will address these motions in turn.

III. PLAINTIFF'S MOTION TO STRIKE

First, Plaintiff in her Motion to Strike [Document #13] asserts that the Court should not consider the Affidavit of James H. Boylan, Jr. in evaluating Defendant's Motion for Summary Judgment. Plaintiff contends that Boylan's Affidavit should be stricken because during discovery in this case, Defendant did not identify Boylan as a witness that Defendant intended to call at trial. However, Plaintiff previously raised similar contentions in her Motion for Extension of Time to Depose Witnesses and Complete Discovery [Document #16], which was denied in a previous Order [Document #19] issued by Magistrate Judge Russell A. Eliason. In that Order, Magistrate Judge Eliason found that during discovery Defendant had appropriately and timely identified potential individuals who had knowledge about this case, and that Plaintiff already had an adequate opportunity to depose any of those individuals. Magistrate Judge Eliason further noted that Defendant was not obligated to disclose which of those individuals Defendant

6

intended to call as witnesses at trial until thirty days prior to the trial itself. See Fed. R. Civ. P. 26(a)(3). Plaintiff did not object to that decision, and the Court will not now revisit this issue, other than to note that Boylan was clearly identified by Defendant during discovery as an individual with personal knowledge of the issues in this case, and Plaintiff could have taken Boylan's deposition if she had chosen. As such, Plaintiff's Motion to Strike will be denied, and the Court will consider Boylan's Affidavit in evaluating Defendant's Motion for Summary Judgment.

IV.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A.   STANDARD OF REVIEW

As noted above, Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. According to Rule 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d

265 (1986). The Court is not "'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (quoting Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448, 20 L. Ed. 867, 872 (1872)).

In considering a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party, in this case, Plaintiff, and accord that party the benefit of all reasonable inferences. Bailey v. Blue Cross & Blue Shield, 67 F.3d 53, 56 (4th Cir. 1995). Moreover, the Court should not grant a motion for summary judgment "'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994) (quoting Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Surety Co., 381 F.2d 245, 249 (4th Cir. 1967)). Nevertheless, a mere scintilla of evidence is insufficient to withstand a motion for summary judgment. Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. There must be evidence "on which the jury could reasonably find for the plaintiff." Id. With this standard in mind, the Court will evaluate the merits of Plaintiff's claim to determine whether summary judgment in favor of Defendant is proper in this case.

B.   PLAINTIFF'S ADEA CLAIM

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to

discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2007). A plaintiff can prove an ADEA violation "(1) under ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue, or (2) under a judicially created proof scheme originally used in the Title VII context in McDonnell Douglas Corp. v. Green . . . and subsequently adapted for use in ADEA cases." Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (citations omitted). Under the familiar McDonnell Douglas scheme, the plaintiff in a discriminatory discharge case has the initial burden to establish a prima facie case of age discrimination, that is, that (1) she is a member of the protected class (age 40 or over), (2) she was discharged, (3) at the time of discharge, she was performing at a satisfactory level, meeting her employer's legitimate expectations, and (4) she was replaced by a substantially younger employee. See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992); see also O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996). If the plaintiff establishes her prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. See Burns, 96 F.3d at 731; Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004). If the defendant comes forward with a legitimate, non-discriminatory reason for the termination, the presumption raised by the prima facie case disappears, and the burden is on the plaintiff to prove that the stated reason is a pretext for discrimination. See Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004); see also Mereish, 359 F.3d at 336. This

9

final burden "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination . . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981) (quoted by Mereish, 359 F.3d at 334).

In applying the McDonnell Douglas burden-shifting proof scheme to the present case, the Court notes first that with respect to Plaintiff's prima facie case, Plaintiff contends that the evidence establishes (1) that she is over age 40, (2) that she was discharged, (3) that she was performing at a satisfactory level, and (4) that she was replaced by a substantially younger worker, that is, by Francesconi. In response, Defendant contends that Francesconi did not replace Plaintiff, and that Plaintiff was instead terminated as part of its larger efforts to cut costs, such that this case should be treated as a "reduction-in-force" case. However, based on the evidence presented, the Court finds that Francesconi could be viewed as Plaintiff's replacement,[2] and the Court will therefore assume for purposes of this discussion that Plaintiff could establish her prima facie case.

---

[2] Specifically, the Court notes that Defendant hired Francesconi as a new employee in the MIS Department while the reduction-in-force efforts were ongoing, and his position was added only five months prior to terminating Plaintiff's employment. In addition, it was anticipated that after Plaintiff's termination, Francesconi would handle any remaining issues related to the AS-400. In these circumstances, and viewing the facts in the light most favorable to Plaintiff, the Court notes that there may at least be some issue as to whether Francesconi could be viewed as Plaintiff's replacement.

However, the Court finds that even if Plaintiff is able to establish a prima facie case, Defendant has come forward with uncontradicted evidence showing a legitimate, non-discriminatory reason for its decision to terminate Plaintiff. Specifically, Defendant has presented evidence to establish that its business was struggling at the time it terminated Plaintiff's employment and that its decision to upgrade from the AS-400 to a personal computer system was a part of its larger effort to become more efficient. Defendant's evidence also shows that Plaintiff's primary utility to Defendant's business was in operating the AS-400, and as a result of Defendant's upgrade to a personal computer system, Defendant's needs with respect to Plaintiff's skills were decreasing. In addition, Defendant asserts, and Plaintiff does not dispute, that Defendant's use of the AS-400 would continue to decrease over time as Defendant further updated its technology. The Court also notes that Plaintiff has admitted that she was "limited [on] the [personal computer] side" of things, (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1A, p. 53), and that Francesconi "was the only one [in the MIS Department] that did the [personal computer] work." (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1B, p. 79.) Finally, Plaintiff admits that she had the opportunity to apply for the position of personal computer technician when it was originally posted by Defendant's Human Resources Department in January 2004, but that she voluntarily decided that she did not want to do personal computer work. Thus, based upon the foregoing, the Court finds that Defendant has produced evidence of a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment; namely, that Francesconi was more qualified than Plaintiff at working

11

with the new computer technologies that Defendant was implementing in order to streamline and improve its business, and that Plaintiff did not have the skills or desire to perform the new personal computer work that was required. Cf. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 513 (4th Cir. 1994) (finding that the employer's layoff decision reflected "business realities, not age discrimination," and emphasizing that "[t]he ADEA was not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges").

In light of Defendant's presentation of this legitimate, non-discriminatory reason for terminating Plaintiff, the burden shifts back to Plaintiff to establish that Defendant's explanation is merely a pretext for age discrimination. See Mereish, 359 F.3d at 336 (explaining that a plaintiff "can meet [her] burden of proving pretext either by showing that [the defendant's] explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of age discrimination"). In this case, Plaintiff has not attempted to present any evidence to establish that Defendant's non-discriminatory explanation is false. In fact, as the Court has outlined above, Plaintiff does not dispute Defendant's evidence that it upgraded to a personal computer system in order to aid its ailing business; and Plaintiff actually agrees with Defendant that Francesconi's skills with respect to the personal computer system were superior to her own.

Instead, Plaintiff generally contends that any alleged skill-set inadequacies on her part were not Defendant's true motivation for terminating her employment, and that the real motivation for the decision was age discrimination. To support this argument, Plaintiff first

12

states that she is prepared to present evidence in the form of testimony by at least three former employees that will show that Defendant engaged in a pattern of age discrimination. However, the Court notes that Plaintiff's Response Brief [Document #15] does not specify who these employees are or precisely what their testimony might be, nor has Plaintiff presented any affidavits from these employees. The Court also notes that Plaintiff has not presented any other support for her contention that Defendant has engaged in a pattern of age discrimination. To the contrary, Plaintiff has explicitly acknowledged that Defendant discharged many of its employees as a result of a streamlining plan which involved the consolidation of roles within Defendant's workforce, but Plaintiff has not presented any evidence to show that older employees were targeted or were disproportionately chosen for termination as part of this plan. (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1C, p. 135-37.) Plaintiff testified in her deposition that a number of employees left the employ of Defendant beginning in 2001 when Defendant began to implement the streamlining plan, but Plaintiff testified that she did not herself know why many of these employees left or whether any of them were replaced. Id. at 120-24. Therefore, in light of the evidence presented, the Court finds that Plaintiff has not produced any evidence to establish that Defendant was engaged in a pattern of age discrimination.

Plaintiff nevertheless contends, based on various remarks allegedly made by Mentz, Defendant's Vice President of Operations, that her termination was actually motivated by age discrimination. In particular, Plaintiff in her deposition alleged that, at some unspecified time,

13

Mentz used the phrase, "out with the old and in with the new." (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1C, p. 120.) In addition, according to Plaintiff, Mentz once said during a staff meeting, "who is that old guy over there in the corner, it looks like he has been here forever." (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1F, p. 15.) Mentz also once allegedly referred to an employee that he did not know by name as "the old guy with the beard." (Dep. of Mike Bienvenue, Document #12, Attach. #6, pp. 48-55.) In addition, Dale Mobley, a former employee of Defendant, testified in his deposition that Mentz made comments about certain of Defendant's engineers "being old and slow" because they had "a lot of junk laying around" on their desks. (Dep. of Dale Aaron Mobley, Document #12, Attach. #5, pp. 31-32.) Finally, Plaintiff in her deposition also alleged that Twomey, the manager of Defendant's MIS Department, once asked Plaintiff when she planned to retire. (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1, pp. 13-14.)

However, Plaintiff has not produced any evidence showing that any of these comments are in any way connected or related to her termination. Cf. Clay Printing, 955 F.2d at 942 (finding evidence insufficient to prove discrimination where there was "no nexus . . . between the alleged discriminatory statements and *any* of the employment decisions") (emphasis in original). Moreover, the Fourth Circuit has "consistently held, along with other circuits, that general or ambiguous remarks referring to the process of generational change create no triable issue of age discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (holding that statements that defendant wanted to protect "the young, bright, junior scientists" and that there

14

was a "problem [of the] average age going higher" did not create any inference of discrimination); Birkbeck, 30 F.3d at 511-12 (holding that the statement that "there comes a time when we have to make way for younger people" did not create inference of age bias because it was merely a truism and a fact of life that did not carry disparaging undertones); Burns, 96 F.3d at 733 ("Isolated and ambiguous statements . . . are too abstract . . . to support a finding of age discrimination."). In the present case, the alleged statements are, at most, stray or isolated comments that do not create an inference of age-related animus and do not indicate any intent to discriminate against older workers. Therefore, the Court finds that, even viewing all of the above alleged remarks in the light most favorable to Plaintiff, no reasonable juror could find that they constitute sufficient evidence that the decision to terminate Plaintiff was actually motivated by age discrimination or that the Defendant's stated reasons for terminating Plaintiff were a pretext for discrimination.

As a final basis for her contention that the decision to terminate her was motivated by age discrimination, Plaintiff contends that certain individuals in Defendant's management were concerned regarding the costs to Defendant in having a number of older employees. However, Plaintiff has not produced any evidence or affidavits asserting any specific statements by managers or any other basis for this contention. The Court does note, however, that Plaintiff may be referring to an email which Mentz sent to Defendant's managers on November 1, 2001. This email included the text of an article on "lean manufacturing" that stated, "buy out your high seniority employees . . . [and] you will be rewarded with a highly motivated, younger workforce

15

during the rest of the decade." (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1F, p. 17.) Indeed, as previously noted, Plaintiff in her deposition indicated that she thinks her seniority is the very reason Defendant terminated her employment: "I don't think [the reason I was discharged] was as much age discrimination as it was that I had been there for over 20 years . . . and they could hire somebody else who only got two weeks of vacations versus my five weeks, probably making the same amount of money." (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1C, p. 130.)

However, even taking as true Plaintiff's assertions that Defendant's actual motivation in terminating her was the cost imposed on Defendant due to Plaintiff's seniority and years of service, the Supreme Court has expressly held that an employer does not violate the ADEA "by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age." Hazen Paper Co. v. Biggins, 507 U.S. 604, 608-09, 113 S. Ct. 1701, 1705-06, 123 L. Ed. 2d 338 (1993). In so holding, the Supreme Court explained that "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age-based.' " Hazen Paper, 507 U.S. at 611, 113 S. Ct. at 1707; see also Clay Printing, 955 F.2d at 942 (noting that a reorganization that resulted in the discharge of employees with longer lengths of service was aimed at "reducing overhead and expenses . . . . [and] does not evince a discriminatory animus to discriminate on the basis of age"). Moreover, reading the entirety of Mentz's email in context confirms that Defendant's motivations were focused on

16

Case 1:05-cv-00379-JAB-RAE   Document 20   Filed 04/11/07   Page 16 of 19

cutting costs and streamlining its business, considerations entirely unrelated to any age-related animus. In particular, the email suggests that employers "take everyone out of value streams where they are no longer needed . . . put the best freed-up employees on lean improvement teams . . . [and if] you can't afford to keep everyone on board with your current workload . . . [f]irst look at bringing work back in from suppliers." (Dep. of Angela Bowen-Hayes, Document #12, Attach. #1F, pp. 16-17.) The email further states, "perhaps you can justify keeping everyone on board even if there is not enough work right now . . . if you still must let folks go, buy out your high seniority employees . . . I truly wish there were some way to defend every employee in [a] downturn, but there isn't. Trying to save all jobs would often mean a company with no jobs." (Id.) Based on the foregoing, the Court finds that the "lean manufacturing" plan set forth in the email is focused on helping an employer save money and the most jobs possible in difficult economic times with the potential for terminating high-seniority, higher-cost employees regardless of age. Accordingly, even assuming that the statements in Mentz's email did motivate Defendant's actions in this case, the Court finds, in light of the Supreme Court's decision in Hazen Paper, that acting on such motivation without any evidence of age-based considerations does not violate the ADEA.

For all of the reasons stated above, the Court finds that Plaintiff is unable to show that Defendant's non-discriminatory explanation for terminating her employment is pretextual. Plaintiff has not presented any evidence to show that Defendant's explanation is false, nor has she produced any evidence from which a reasonable juror could conclude that Defendant's

17

decision to terminate her employment was actually motivated by age.

Having so concluded, the Court notes that Plaintiff nevertheless contends that she can establish her age discrimination claim through ordinary principles of proof, without resort to the McDonnell-Douglas burden-shifting scheme. However, the Fourth Circuit has made clear that "[r]egardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext) . . . [t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination . . . . [and] [t]o demonstrate such an intent to discriminate . . . [the plaintiff] must produce sufficient evidence upon which one could find that the protected trait . . . actually motivated the employer's decision." Hill, 354 F.3d at 286 (internal quotations omitted). In the present case, for all of the reasons discussed above, Plaintiff has failed to present sufficient evidence of any kind to establish that Defendant's decision to terminate her was motivated by age or that her age played any role in the decisionmaking process.[3] Therefore, summary judgment in Defendant's favor is appropriate with respect to Plaintiff's ADEA claim.

---

[3] The Fourth Circuit has indicated that the "mixed-motive" provision in the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(m), and the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) interpreting that provision, do not apply to cases brought under the ADEA. See Baqir v. Principi, 434 F.3d 733, 745 n.13 (4th Cir. 2006); see also Mereish, 359 F.3d at 340 (leaving the issue open). However, the parties have not addressed this question and the Court need not reach this issue in the present case because Plaintiff has failed to present sufficient evidence of discrimination regardless of the scheme used, as discussed above.

V.   CONCLUSION

For the reasons stated above, Plaintiff's Motion to Strike the Affidavit of James H. Boylan, Jr. [Document #13] will be DENIED.  In addition, Defendant's Motion for Summary Judgment [Document #11] will be GRANTED.[4]  As such, Plaintiff's lawsuit will be DISMISSED with prejudice.

An Order and Judgment consistent with this Memorandum Opinion will be entered contemporaneously herewith.

This, the 11th day of April, 2007.

                                  /s/ James A. Beaty
                                  United States District Judge

_____

---

[4] The Court notes that Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment is also styled as her own Motion for Summary Judgment [Document #15].  However, Plaintiff's Motion fails to comply with the Local Rules of this District, because inter alia, Plaintiff's Motion was filed merely as a part of her Response Brief to Defendant's Motion for Summary Judgment and not in compliance with Local Rule 7.3(a) which requires all motions to be set out in a separate pleading from their accompanying brief. Therefore, Plaintiff's purported Motion for Summary Judgment is not properly before the Court.  Moreover, the Court further notes that even if it were to consider Plaintiff's Motion on the merits, it would deny Plaintiff's Motion for the same reasons which support the Court granting Defendant's Motion for Summary Judgment.